**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Home Loan Mortgage Corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>Sherryl L. Madison,<br><br>        Defendant. | No. CV-09-1508-PHX-GMS<br><br>**ORDER** |

Pending before the Court is a Motion for Summary Judgment filed by Plaintiff Federal Home Loan Mortgage Corporation a/k/a Freddie Mac (Doc. 62) and a Motion to Dismiss (Doc. 69) filed by Defendant Sherryl L. Madison. For the following reasons, the Court grants Plaintiff's Motion and denies Defendant's Motion as moot.

**BACKGROUND**

The present action has been before this Court for some time. An earlier Order of the Court, dated June 3, 2010, sets out the basic factual background of this case. (*See* Doc. 40). In that Order, the Court determined that the lis pendens and deed of release and reconveyance filed by Defendant with the Maricopa County Recorder were both groundless.[1]

---

[1] The real property in question (the "Property") has a legal description as follows: Lot 499, Wildflower Ranch Unit IV, according to book 447 of maps, page 16, Records of Maricopa County, Arizona. It has a physical address of 16083 West Morning Glory Street,

1    Following the June 3 Order, Defendant filed numerous motions for reconsideration, all of which were denied. (*See* Docs. 51, 56). Subsequently, Plaintiff moved for entry of judgment in its favor to quiet title and obtain an award for costs, attorney fees, damages, and statutory penalties pursuant to various subsections of Ariz. Rev. Stat. ("A.R.S.") § 33-420. In a subsequent Order dated October 5, 2010, the Court denied the motion without prejudice "until such time as Plaintiff establishes that it was/is entitled to enforce the Note and Deed of Trust in this case pursuant to A.R.S. § 47-3309 and other possibly applicable Arizona law." (Doc. 58 at 2). Plaintiff now seeks to establish that it is the beneficial title holder and requests summary judgment in its favor.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party*.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250) (emphasis in original).

### II. Defendant's Supplemental Responses and Motion to Dismiss

As an initial matter, Defendant has filed a total of three Responses to Plaintiff's

---

Goodyear, AZ 85338.

Motion. (*See* Docs. 66, 68, and 69). Docket number 66 is labeled a "Response," while docket numbers 68 and 69 are each labeled a "Supplemental Response" and appear to be identical. The Clerk of the Court has interpreted docket number 69 as a "Motion to Dismiss" for separate disposition by the Court.

Pursuant to Local Rule of Civil Procedure 56.1(d), a party has 30 days in which to file a responsive memorandum in opposition to a motion for summary judgment. Plaintiff filed its motion for summary judgment on November 5, 2010, giving Defendant until December 8, 2010, to file a response. Upon Defendant's motion, the Court granted Defendant an extension of time in which to file her response, in its Order providing that "[n]o further extensions will be granted absent good cause." (Doc. 65). Defendant did not petition the Court for a second extension of time, nor did she obtain leave of the Court to file an amended or supplemental response. Even if the Court had been so petitioned, upon examination of the supplemental responses, no good cause appears in accordance with that Order. Failure to follow the Federal Rules of Civil Procedure and the Local Rules of Civil Procedure–which do not permit supplemental filings of a response as of right–does not constitute good cause. Good cause is also not present merely because Defendant makes additional legal arguments in her subsequent rounds of briefing which she had every opportunity to present in her initial response. "Although [the Court] construe[s] pleadings liberally in their favor, pro se litigants are bound by the rules of procedure." *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) (citing *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987)). The Court will therefore proceed considering Defendant's arguments against Plaintiff's Motion by relying solely upon the initial and properly submitted response contained at docket number 66.

While the Court will not consider the supplemental response at docket number 69 for the purposes of Plaintiff's summary judgment motion, language in that document can be construed (and was so construed by the Clerk of the Court) to create a separate Motion to Dismiss pursuant to Federal Rule of Civil Procedure 17(a). Rule 17(a) states that "[a]n action must be prosecuted in the name of the real party in interest." The Court interprets Defendant to be arguing that the case ought to be dismissed for Plaintiff's lack of standing.

1  Because the Court finds that Plaintiff has standing under A.R.S. § 33-420 (*see discussion infra* section III), Defendant's Motion to Dismiss (Doc. 69) is denied as moot.

**III. Action to Clear Title Pursuant to A.R.S. § 33-420(B)**

Plaintiff first petitions the Court to clear title and declare void certain encumbrances to the Property recorded by Defendant with the Maricopa County Recorder. Such action is brought pursuant to A.R.S. § 33-420(B), which provides that

> [t]he owner or beneficial title holder of the real property may bring an action pursuant to this section in the superior court in the county in which the real property is located for such relief as is required to immediately clear title to the real property as provided for in the rules of procedure for special actions. This special action may be brought based on the ground that the lien is forged, groundless, contains a material misstatement or false claim or is otherwise invalid. The owner or beneficial title holder may bring a separate special action to clear title to the real property or join such action with an action for damages as described in this section. In either case, the owner or beneficial title holder may recover reasonable attorney fees and costs of the action if he prevails.

In its previous Orders, the Court held that the lis pendens and deed of release and reconveyance recorded by the Defendant were groundless. (*See* Doc. 40 at 5; Doc. 58 at 1–2). The critical remaining issue for Plaintiff to perfect its claim to quiet title to the Property–and additionally to recover reasonable costs and fees–is whether Plaintiff is an "owner or beneficial title holder" under the statute.

Arizona law treats a lending bank as a beneficial title holder for the purposes of A.R.S. § 33-420. *Hatch Cos. Contracting, Inc. v. Ariz. Bank*, 170 Ariz. 553, 556, 826 P.2d 1179, 1182 (App. 1991). In *Hatch*, the court held that the Arizona Bank, as a beneficiary under a deed of trust on the real property in question, was a beneficial title holder with standing to sue under that statute. *Id.* The court noted that, in Arizona, "a deed of trust 'conveys' the trust property to a trustee who holds the property for the benefit of the beneficiary designated in the deed of trust." *Id.*

As this Court has already determined, the deed of trust designates Mortgage Electronic Registration Systems ("MERS") as the nominee beneficiary for the lending bank, ComUnity Lending ("ComUnity"). (*See* Doc. 40 at 2; *see also* Doc. 63, Ex. B). ComUnity then transferred its beneficial interest in the promissory note–and the corresponding interest in the

- 4 -

deed of trust, *see* A.R.S. § 33-817 ("The transfer of any contract or contracts secured by a trust deed shall operate as a transfer of the security for such contract or contracts.")–to IndyMac Bank via an allonge to the promissory note. IndyMac Bank later failed, and its assets were transferred to IndyMac Federal. MERS, now as the nominee for IndyMac Federal and the beneficiary under the deed of trust, transferred its beneficial interest to Plaintiff. Because Plaintiff is the successor-in-interest to a beneficiary of the deed of trust, and because a beneficiary of a deed of trust is a beneficial title holder under Arizona law, Plaintiff is a beneficial title holder entitled to maintain an action under A.R.S. § 33-420.

Plaintiff also holds a beneficial interest in the property because it is, through counsel, the present holder of the promissory note. Arizona's statutory enactment of the Uniform Commercial Code–Negotiable Instruments provides that a "[p]erson entitled to enforce" a security instrument "means the holder of the instrument" (or other specified categories of nonholders not at issue here). A.R.S. § 47-3301. Pursuant to A.R.S. § 47-1201(B)(21), a holder is "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." Counsel for Plaintiff has produced an affidavit declaring that his law firm is in physical possession of the note for the benefit of Plaintiff. (*See* Doc. 63, Ex. D). Additionally, the allonge to the promissory note contains an indorsement in blank on the reverse. (*See* Doc. 67 at 2). Under A.R.S. § 47-3205(B), "[w]hen indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." Finally, A.R.S. § 47-1201(B)(5) provides that a bearer is "a person in possession of a negotiable instrument . . . that is payable to bearer or indorsed in blank." Because the blank indorsement makes the promissory note payable to Plaintiff since its counsel is in physical possession of the note and allonge, Plaintiff has a beneficial interest in the note. Pursuant to A.R.S. § 33-817, with its beneficial interest in the note, Plaintiff consequently maintains a beneficial interest in the deed of trust. Accordingly, Plaintiff qualifies as a beneficial title holder with standing to sue under A.R.S. § 33-420(B).

Defendant's arguments to the contrary are unavailing. First, Defendant cites to no

1 authority for her proposition that an actual signature in blue ink, rather than the alleged
2 signature stamp, is needed for the indorsements on the allonge. In fact, "[a] signature may
3 be made . . . manually or by means of a device or machine . . . by a word, mark or symbol
4 executed or adopted by a person with present intention to authenticate a writing." A.R.S. §
5 47-3401(B). Defendant introduces no evidence that the stamp is not such a "device" and that
6 it was not the "present intention" of ComUnity Lending to assign its beneficial interest to
7 IndyMac Bank or for the latter bank to indorse the note in blank. Second, Defendant cites
8 to the Uniform Commercial Code to support her argument that "[a]n indorsement must be
9 written by or on behalf of the holder and on the instrument or on a paper so firmly affixed
10 thereto as to become a part thereof." (Doc. 66 at 3 (internal quotations omitted)). Her
11 contention is that the allonge cannot meet this requirement since it is not permanently affixed
12 to the promissory note. This reliance on an outdated version of the Uniform Commercial
13 Code is misplaced, particularly since the text Defendant cites is not part of the law of
14 Arizona. A.R.S. § 47-3204(A) provides only that "a paper affixed to the instrument is part
15 of the instrument." Because there is no specific permanency requirement under Arizona law,
16 the Court finds that the allonge is sufficiently affixed to the promissory note when secured
17 by an Acco fastener.

This Court has already determined that the lis pendens and the deed of release and reconveyance were groundless. (*See* Doc. 40 at 5). Because Plaintiff is a beneficial title holder to the Property, it has standing to file suit under A.R.S. § 33-420(B) to clear title and recover its costs and fees. Accordingly, a final judgment shall issue declaring the lis pendens and the deed of release and reconveyance null, void, and of no effect whatsoever, and further declaring title to the Property forever free and clear from those encumbrances. Plaintiff shall also be entitled to an award of reasonable costs and attorney fees incurred in its pursuit of the quiet title action upon further motion to the Court.

**IV. Action for Damages or Penalties Pursuant to A.R.S. § 33-420(A)**[2]

Pursuant to A.R.S. § 33-420(B), an action to quiet title can be joined with an action for damages or statutory penalties pursuant to § 33-420(A). This latter subsection clearly contains an element of scienter:

> A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, *knowing or having reason to know* that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording, whichever is greater, and reasonable attorney fees and costs of the action. (Emphasis added).

Scienter under § 33-420(A) is a question of fact. *Pence v. Glacy*, 207 Ariz. 426, 429, 87 P.3d 839, 842 (App. 2004) ("Whether [the defendant] knew or had reason to know that the deed of trust was invalid is a question of fact."); *see also Wyatt v. Wehmueller*, 167 Ariz. 281, 285, 806 P.2d 870, 874 (1991) (recognizing that A.R.S. § 33-420(E) "uses the exact scienter language as subsection A and makes the filing of a groundless lis pendens a class 1 misdemeanor, a criminal offense" and noting that "the two subsections must be interpreted consistently"). Pursuant to Federal Rule of Civil Procedure 38(d), Defendant has waived her right to a jury trial, for she did not file a jury demand within 14 days of the filing of Plaintiff's Complaint.[3] The Court therefore is charged with finding the facts of this case, including whether Plaintiff acted with the requisite scienter under A.R.S. § 33-420(A).

On May 4, 2010, the Court issued an Order to Show Cause, requesting *inter alia* that

---

[2] The Court construes Plaintiff's summary judgment motion to be requesting additional relief for damages or penalties only under A.R.S. § 33-420(A) and not under § 33-420(C). While relief under subsection C was requested in the Complaint, no additional briefing to the Court, including in Plaintiff's motion for an order to show cause (Doc. 29), appears to reach this issue.

[3] Federal Rule of Civil Procedure 38(b) provides that the written jury demand on a given issue must be served "no later than 14 days after the last pleading directed to the issue is served[.]" Under Federal Rule of Civil Procedure 7(a), the word "pleading" has a defined meaning which, as relevant to the documents filed in this case, includes only the Complaint.

- 7 -

1 the parties show cause "why the lis pendens Defendant has recorded against [the Property] should not be declared null and void, and why pursuant to [A.R.S] § 33-420 (2007) this Court should not find the Defendant *knowingly* filed an invalid and groundless release and thus award to Plaintiff . . . the sum of not less than $5,000 or for treble the actual damages caused by the recording[.]" (Doc. 37 at 2 (emphasis added)). At the show cause hearing on May 25, 2010, Defendant repeatedly claimed that she recorded the lis pendens and the deed of release and reconveyance following the advice of her former attorney, Robert Jung. First, Defendant notes that she filed the lis pendens "pursuant to advice . . . of counsel" because she thought she retained a security interest in the Property. (Doc. 43 at 15). Though she had previously quitclaimed the Property to a relative,[4] Defendant maintains Mr. Jung advised her that the quitclaim deed was executed subject to a promissory note between her and that relative so that the Property would revert to Defendant in the event of default. (*See id.* at 13–20).

Second, Defendant claimed at the hearing that she relied on Mr. Jung's advice to file the deed of release and reconveyance. In a filing with the Court prior to the show cause hearing, Defendant included a Qualified Written Request ("QWR") which Mr. Jung had sent to IndyMac Bank on her behalf. (*See* Doc. 38, Ex. A). This request, written pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), claimed that IndyMac Bank's failure to "rebut[] to [sic] any part of this RESPA REQUEST" would entail its "granting unto Sherryl Madison's [sic] unlimited Power of Attorney and any and all full authorization in signing and endorsing IndyMac Bank, FSB [sic] name upon any instruments in satisfaction of the obligations of this RESPA REQUEST/Agreement or any agreement arising from this agreement." (*Id.* at 20). It is pursuant to this letter and IndyMac Bank's failure to respond, together with the advice of Mr. Jung, that Defendant contends she filed

---

[4] The quitclaim deed recorded July 15, 2008, and made part of the Records of Maricopa County, Arizona, at Recording Number 20080616382 (*see* Doc. 29, Ex. C), notes that Defendant is exempt from filing an affidavit along with the deed pursuant to A.R.S. § 11-1134(B)(3). That provision creates an exemption from affidavit requirements for transfers of title involving nominal consideration between spouses or between parents and their children.

- 8 -

the deed of release and reconveyance as IndyMac Bank's attorney-in-fact. (*See* Doc. 43 at 20–24).

Ultimately, Defendant claims, she "relied upon [her] attorney's direction. There was no scienter or knowledge of wrongdoing. There was no intention to defraud anyone." (*Id.* at 24). In its role as the finder of fact, however, this Court finds that Defendant's self-serving and conclusory claims are meritless and that Defendant did possess the requisite scienter under A.R.S. § 33-420(A). With regard to her filing of the lis pendens, Defendant did not produce evidence at the show cause hearing that she retained any sort of security interest in the Property whatsoever. The very nature of the transaction–a quitclaim deed executed between two close family members, with a security interest allegedly retained by Defendant even though there is no such record–appears to have been a sham. Additionally, in light of the fact that Defendant had quitclaimed her interest in the Property over one month before the date of the lis pendens and over nine months before she recorded the lis pendens with the Maricopa County Recorder (*see* Doc. 1, Ex. B–C), the Court finds that Defendant knew or should have known that a lis pendens claiming she possessed some interest in the Property was, at the least, groundless. Defendant's statements to the contrary, the Court holds, are entirely lacking in credibility.

Similarly, Defendant's conduct with regard to the deed of release and reconveyance was so flagrant that the Court finds Defendant knew or had reason to know such document was forged, groundless, invalid, or contained a material misstatement or false claim. In effect, Defendant acted to release herself of her own mortgage. No reasonable person could believe that this constitutes lawful conduct and that a document purporting to do such could be valid. Even if Defendant's statement that she was advised by counsel that she could act as IndyMac Bank's attorney-in-fact were true, any reasonable person would have been highly skeptical that this entailed the authority to unilaterally declare her own mortgage paid in full. Defendant cannot hide behind the allegedly incompetent advice of her former attorney to evade responsibility for her knowing actions. Furthermore, even if Defendant were rightfully IndyMac Bank's attorney-in-fact, she still made a false statement that the mortgage was fully

- 9 -

paid, since she was (and, to the Court's knowledge, still is) actually in default on her mortgage. Accordingly, the Court finds that Defendant recorded the deed of release and reconveyance knowing or with reason to know that it was at least groundless or invalid.

Plaintiff's counsel noted at the show cause hearing that, even though the primary purpose of this action was to remove the cloud on the title to the Property (s*ee* Doc. 43 at 10), his client did wish to retain the right to seek damages or penalties. (*Id.* at 30–31). Relief under A.R.S. § 33-420(A) is phrased in the disjunctive; that is, Plaintiff can recover five thousand dollars in statutory penalties "*or* treble the actual damages caused by the recording, whichever is greater." (Emphasis added). Plaintiff itself realizes that actual damages are "to be proven at trial," (Doc. 1 at 10), and, in any event, Plaintiff provides no basis upon which the Court could even estimate actual damages at this stage. It is the burden of the Plaintiff, not of the Court, to lay out the factual basis for an award of actual damages. However, in context with Plaintiff's stated primary objective of this action and its desire to obtain a final judgment, the Court construes Plaintiff's motion for summary judgment to request the $5,000 minimum statutory penalty per groundless recorded document.

Because the Court concludes Defendant possessed the requisite scienter under A.R.S. § 33-420(A), Plaintiff is entitled to judgment against Defendant for $5,000 per groundless recorded document, for a total of $10,000.

## CONCLUSION

Plaintiff is the beneficial title holder of the Property under Arizona law. Since this Court has already held in prior Orders that the lis pendens and deed of release and reconveyance are groundless (*see* Docs. 40 and 58), Plaintiff is entitled to final judgment clearing title to the Property over the encumbrances recorded by Defendant. Under A.R.S. § 33-420(B), Plaintiff shall also be entitled to reasonable costs and attorney fees incurred in this action. Furthermore, the Court finds that Defendant recorded the encumbrances knowing or with reason to know that they were groundless at minimum. Plaintiff is therefore entitled to a judgment against Defendant for $10,000 in statutory penalties pursuant to A.R.S. § 33-420(A).

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment (Doc. 62) is **GRANTED**.

2. Defendant's Motion to Dismiss (Doc. 69) is **DENIED** as moot.

3. As Plaintiff prevails under A.R.S. § 33-420(A) and (B), Plaintiff retains the right to file a motion for the award of reasonable costs and attorney fees pursuant to the procedures outlined in Federal Rule of Civil Procedure 54(d) and Local Rules of Civil Procedure 54.1–54.2. Upon such a motion, Defendant may respond and Plaintiff may subsequently reply as provided in those Rules. No motion for an extension of time for any of the aforementioned filings shall be granted absent a showing of good cause.

4. Plaintiff's Motion for Summary Judgment (Doc. 62) having been granted, final judgment to clear title to the Property and to award Plaintiff statutory penalties shall, pursuant to Federal Rule of Civil Procedure 58, follow this Order in a separate document.

DATED this 12th day of July, 2011.

*G. Murray Snow*
United States District Judge